IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GC SERVICES LIMITED PARTNERSHIP, a Delaware limited partnership, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-19-1180 |
| DENISE LITTLE, an individual, | § § § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

GC Services Limited Partnership sued Denise Little, seeking an order compelling arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and a stay of all claims in Little's state-court suit against GC Services in Missouri. (Docket Entry No. 1). Little moves to dismiss, GC Services responded, Little replied, and GC Services surreplied. (Docket Entry Nos. 9, 11, 12, 15).[1] Based on the complaint; the motion, response, reply, and surreply; the record; and the applicable law, the court denies Little's motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. The reason for this ruling is explained below.

**I.     Background**

Little applied to work for GC Services, a call-center management company, in February 2017. (Docket Entry No. 1 at ¶ 15; Docket Entry No. 11 at 2). GC Services alleges that on February 26, during the application process, Little electronically signed an Arbitration Agreement, which a GC Services agent signed the next day. (*Id.* at ¶ 15). The Agreement stated:

> **All Disputes Must be Arbitrated.** It is the intent of the parties hereto that all legally cognizable disputes between them that cannot be resolved to the parties'

---

[1] Little moved to dismiss on May 1, 2019, (Docket Entry No. 7), and filed a corrected motion to dismiss that same day, (Docket Entry No. 9). The court denies Little's first motion to dismiss as moot. (Docket Entry No. 7).

1

> satisfaction through use of the Company's personnel policies, must be resolved by final and binding arbitration. Claims subject to arbitration include all legally cognizable claims in the broadest context and include, but are not limited to, any dispute about the interpretation, applicability, validity, existence, enforcement, or extent of arbitrability of or under this Agreement, and any claim arising under federal, state, or local statute, regulation, or ordinance, any alleged contract, or under the common law. This includes, by way of non-exhaustive illustration only, any claim of employment discrimination in any alleged form . . . or any other claim, whether contractual, common-law, statutory, or regulatory arising out of, or in any way related to, Individual's application for employment with and/or employment with Company, the termination thereof, this Agreement, or any other matter incident or in any manner related thereto.

(Docket Entry No. 1 at ¶ 15; Docket Entry No.1-1 at 2). The Agreement allowed suits "to compel or in aid of arbitration," but these suits could be "brought solely and only in the state or federal courts located in Houston, Harris County, Texas." (Docket Entry No. 1 at ¶ 17; Docket Entry No. 1-1 at 3). The Agreement also stated that:

> the parties agree to the exercise of personal jurisdiction over them, waive any contest to the exercise of such jurisdiction, waive any right to seek dismissal based on jurisdictional or venue grounds or transfer any action filed in the state or federal courts located in Houston, Harris County, Texas, and waive the right to oppose or contest any motion to dismiss or transfer any action either party may file in any other court.

(Docket Entry No. 1 at ¶ 3; Docket Entry No. 1-1 at 3).

In February 2019, Little sued GC Services in Missouri state court, alleging violations of the Missouri Human Rights Act based on sex and racial discrimination. (Docket Entry No. 1 at ¶¶ 5, 19; Docket Entry No. 1-2). GC Services alleges that its counsel told Little that she had to arbitrate her claims, but that Little refused to do so. (Docket Entry No. 1 at ¶ 20). In April 2019, GC Services sued Little in this court, seeking an order requiring Little to arbitrate the issues presented in her Missouri state-court litigation and staying the Missouri state court proceedings until the parties complete arbitration in accordance with the Agreement. (*Id.* at ¶ 21).

Little moves to dismiss this suit for lack of personal jurisdiction, arguing that she did not sign the Arbitration Agreement and that requiring her to defend the case in this District would

result in extreme inconvenience and unfairness. (Docket Entry Nos. 9, 10). She also seeks dismissal based on improper venue and failure to state a claim, arguing that this court should dismiss GC Services's claim for an injunction staying her Missouri state-court litigation because the Anti-Injunction Act prevents this court from granting that relief. (*Id.*).

## II. Personal Jurisdiction

### A. The Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercising jurisdiction is consistent with due process. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *see Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004). Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

Federal due process permits personal jurisdiction over a nonresident defendant with "minimum contacts" with the forum state, subject to the limit of not offending "traditional notions of fair play and substantial justice." *Id.* The extent of the contacts determines whether the court's jurisdiction is specific or general. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A court has general jurisdiction over a nonresident defendant "to hear any and all claims" if that defendant's contacts with the state are so "'continuous and systematic' as to render [that defendant] essentially at home in the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'continuous and systematic contact test is a difficult one to meet, requiring extensive contacts

between a defendant and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)).

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919 (citations omitted). A court asks "whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protection of its laws.'" *Id.* at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Specific jurisdiction exists "when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quoting *Panda v. Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001)). Although the defendant's contacts with the forum must be "more than random, fortuitous, or attenuated, or . . . the unilateral activity of another party or third person," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts," *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498–99 (5th Cir. 2012) (quotation omitted).

Under Rule 12(b)(2), "[w]hen the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). "Proof by a preponderance of the evidence is not required." *Johnston*, 523 F.3d at 609 (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). In deciding

4

whether personal jurisdiction exists, "[t]he district court may receive 'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist in the jurisdictional analysis." *Little v. SKF Serige AB*, No. 13-1760, 2014 WL 710941, at *3 (S.D. Tex. Feb. 24, 2014) (quoting *Walk Haydel*, 517 F.3d at 241). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Johnston*, 523 F.3d at 609 (quotations omitted). But the district court is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandwine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

B. Analysis

1. Little's Agreement to Arbitrate

GC Services argues that the Arbitration Agreement Little signed contained a valid provision choosing Houston, Texas as a mandatory forum for resolving disputes arising under the contract; choosing Texas law; and consenting to personal jurisdiction in the State of Texas. (Docket Entry No. 11 at 3). Little responds that she never signed the Agreement, alleging that she twice refused to sign it. (Docket Entry No. 10 at 5). She contends that after her second refusal, "GC Services never broached the subject of the unsigned agreement" again. (*Id.* at 5–6). According to GC Services, "Little's assertions are patently incorrect" because "GC Services's electronic application system required that Little electronically sign the [Arbitration Agreement] in the process of submitting her application." (Docket Entry No. 11 at 4 (emphasis omitted)).

The Agreement that GC Services attached to the complaint and Little's motion and brief show a checkmark by a box for "Individual Signature" and identifies the party checking the box as Denise Little. The box was checked and dated February 26, 2017, at 9:03 p.m. (Docket Entry

No. 1-1 at 6; Docket Entry No. 10-1 at 5). The Agreement states that "[c]hecking the checkbox above is equivalent to a handwritten signature." (Docket Entry No. 1-1 at 6; Docket Entry No. 10-1 at 5). GC Services points to data from its applicant tracking system, iCIMS, showing that it was Little who checked the box to sign the Agreement on February 26, 2017. (Docket Entry No. 11 at 4–5; Docket Entry No. 11-2 at ¶¶ 22–24). According to GC Services, the only way to record an electronic signature is for the applicant to log into the system with a private password that GC Services does not know. GC Services states that "it would be impossible for someone to backdate [a] signature." (Docket Entry No. 11 at 5; Docket Entry No. 11-2 at ¶ 31).

Little submits her own affidavit stating that she refused to sign the Arbitration Agreement when she met with a GC Services Human Resources Department representative in February 2017 as evidence that she did not sign the Agreement by checking the box on the online Application. (Docket Entry No. 10-2 at ¶¶ 11–15). She states that after being asked to return to Human Resources Department later that week, the human resources representative asked Little if the representative could "click the button to sign it," and that Little refused. (*Id.* at ¶¶ 17–18). Little also points to emails sent from John Kokenge, a Human Resources Department representative, and from GC Services's Human Resources Department, asking her to fill out forms for the onboarding process. (Docket Entry No. 12-3). Several emails dated in March 2017 from Kokenge stated that Little had not completed the onboarding documents or that parts of her application were "in an incomplete status." (*Id.*). One email dated March 1, 2017, stated that GC Services had received Little's online application but had not scheduled an interview. (*Id.* at 1).

Courts in this circuit have concluded that electronic signatures under similar circumstances are valid. *See, e.g.*, *Holmes v. Air Liquide USA LLC*, No. H-11-2580, 2012 WL 267194, at *3 (S.D. Tex. Jan. 30, 2012); *Buckhalter v. J.C. Penney Corp.*, No. 3:11-cv-752-CWR-FKB, 2012

WL 4468455, at *2 (S.D. Miss. Sept. 25, 2012). Although "we cannot know with 100% certainty that" it was Little who checked the box to provide her electronic signature, the law and record evidence amply support the conclusion that GC Services has met its burden. *Holmes*, 2012 WL 267194, at *3. The March 2017 emails from the Human Resources Department discuss deficiencies in her application, but the emails do not refer to Little failing to sign the Agreement. The dates and contents of those emails further support finding that GC Services met its burden to show that Little signed the Arbitration Agreement.

### 2. The Forum-Selection Clause

Little argues that even if the court concludes that she signed the Arbitration Agreement, the forum-selection clause cannot establish personal jurisdiction because the forum-selection clause is unreasonable. (Docket Entry No. 10 at 7). She argues that the incorporation of the forum-selection clause resulted from fraud and that enforcing it would cause her "grave inconvenience or unfairness." (*Id.* (citing *Haynsworth v. The Corporation*, 12 F.3d 956, 963 (5th Cir. 1997))).

"A forum-selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995) (per curiam); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004). A forum-selection clause demonstrates a party's consent to jurisdiction in a specific forum, and courts, absent a showing of fraud or overreaching, enforce such consent. *See Kevlin*, 46 F.3d at 15.

A forum-selection clause may be mandatory or permissive. A clause is mandatory if the language clearly demonstrates the "parties' intent to make [the forum] exclusive." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *Kevlin*, 46 F.3d at 14 ("This contract shall be interpreted and construed in accordance with the laws of the State of Texas.

The legal venue of this contract and any disputes arising from it shall be settled in Dallas County, Texas."). "Where the agreement contains clear language showing that jurisdiction is appropriate only in a designated forum, the clause is mandatory." *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003); *see Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). By contrast, courts have held forum-selection provisions permissive when the language does not prescribe the venue or provide for exclusivity. *See, e.g.*, *Mun. Admin. Servs., Inc.*, 376 F.3d at 504–05 ("The undersigned Contractor does further hereby consent and yield to the jurisdiction of the State Civil Courts of the Parish of Orleans . . . ."); *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127–28 (5th Cir. 1994) ("The laws and courts of Zurich are applicable."); *Keaty v. Freeport Indon., Inc.*, 503 F.2d 955, 956 (5th Cir. 1974) ("This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York.").

The forum-selection clause in the Arbitration Agreement Little signed states that "[a]ny lawsuit for injunctive relief, to compel or in aid of arbitration . . . shall be brought solely and only in the state or federal courts located in Houston, Harris County, Texas." (Docket Entry No. 1-1 at 3). The Agreement states that "the parties agree to the exercise of personal jurisdiction over them, waive any contest to the exercise of personal jurisdiction, [and] waive any right to seek dismissal based on jurisdictional or venue grounds or transfer any action" in those courts. (*Id.*). The words "solely" and "only" are a simple but clear limitation that not only permits, but requires Houston, Texas to be the forum for this dispute. The clause is mandatory.

A mandatory forum-selection clause demonstrates a party's consent to jurisdiction in a specific forum. *See Kevlin*, 46 F.3d at 15; *see also, e.g.*, *Alliantgroup, L.P. v. Feingold*, No. H-09-0479, 2009 WL 1109093, at *11 (Apr. 24, 2009) (denying motion to dismiss for lack of personal

8

jurisdiction based on an employment agreement containing a forum-selection clause); *Total Petrochemicals USA, Inc. v. PCL Packaging, Inc.*, No. H-07-1574, 2007 WL 2300497, at *3 (S.D. Tex. Aug. 7, 2007) (denying a motion to dismiss for lack of personal jurisdiction when the contract sued on contained a forum-selection clause).

A mandatory forum-selection clause is enforceable unless the defendant shows that it is unreasonable. *See, e.g.*, *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004); *Haynsworth*, 121 F.3d at 962–63. The defendant can show unreasonableness by establishing one of the following: (1) the inclusion of the forum-selection clause into the written contract was the result of fraud or overreaching; (2) the party opposing enforcement of the clause "will for all practical purposes be deprived of his day in court" because of the extreme inconvenience or unfairness of the forum specified in the clause; (3) the law specified in the clause is fundamentally unfair and will cause plaintiff to be deprived of a remedy; or (4) enforcement of the clause would go against a strong public policy of the forum state. *Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines*, 499 U.S. 485, 595 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972)). The defendant bears a "heavy burden of proof." *Id.* (citing *M/S Bremen*, 407 U.S. at 17); *see also Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 35 (5th Cir. 1998) ("The burden of proving unreasonableness is a heavy one, carried only by a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the [resisting party] of his day in court.").

Little has not met her substantial burden of rebutting the presumptive validity of the mandatory forum-selection clause. She argues fraud by pointing out that the Agreement requires arbitration in Missouri but permits lawsuits to enforce the Agreement only in Texas. (Docket Entry No. 10 at 7–8). Little does not assert that the forum-selection clause "was the product of

9

fraud or coercion." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974). The Agreement's distinction between the forum for arbitration and the forum for litigation does not support finding fraud or overreaching by GC Services.

Requiring Little to defend against GC Services's claims in Texas is not so inconvenient as to deprive her of her day in court. The Supreme Court has held that if the forum-selection clause is reasonable, some inconvenience and expense does not make it unenforceable. *Carnival Cruise Lines*, 499 U.S. at 590. GC Services has a legitimate interest in litigating disputes arising from its employment agreements in the venue of its principal place of business. Little does not point to any fundamental unfairness under the federal or Texas laws that apply in this forum, or any strong Texas public policy undermined by enforcing the clause.

This court finds that the forum-selection clause is reasonable and enforceable.

### 3. Fairness

In deciding whether it is fair and reasonable to require a nonresident defendant to litigate in Texas, a court must consider several factors: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003) (citing *Burger King*, 471 U.S. at 477). "Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. The defendant must make a 'compelling case.'" *Id.* (citations omitted) (quoting *Burger King*, 471 U.S. at 477).

Little argues that it would be unfair to require her to defend in Texas because this court is "approximately 800 miles from her home" and she "performed her work for GC Services solely in Missouri." (Docket Entry No. 10 at 4). Neither of these arguments demonstrates that "traditional notions of fair play and substantial justice" would be offended by asserting personal jurisdiction over Little in this case. Little's claims of inconvenience and unfairness amount to a "David versus Goliath" argument, which the Fifth Circuit has rejected. *See Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 116 (5th Cir. 1996) ("[A] forum selection clause was upheld in *Carnival Cruise Lines* even where the plaintiffs were individuals. ISSI's David versus Goliath argument is not persuasive.").

While litigation in Texas may be inconvenient to Little, Texas has an interest in this litigation because it involves a Texas company. *See Cent. Freight Lines*, 322 F.3d at 384–85 ("Texas would seem to have an interest in adjudicating its domiciliary's [claims] that is sufficient to satisfy Due Process concerns about traditional notions of fair play and substantial justice."); *Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co.*, 653 F.2d 921, 923 (5th Cir. Unit A Aug. 1981) ("Texas has an interest in providing a forum for this litigation over a contract that produced substantial business activity in Texas, with consequent extensions of credit, and that requires the application of Texas law."). It is not unfair to require Little to respond in Texas to an action on an Arbitration Agreement that she entered into with a Texas corporation, that required a Texas forum for litigation and consents to jurisdiction in Texas. Asserting personal jurisdiction over Little does not offend traditional notions of fair play and substantial justice in light of the interest Texas has in the case. *See Am. Airlines, Inc. v. Rogerson ATS*, 952 F. Supp. 377, 381

(N.D. Tex. 1996) (holding that a nonresident defendant's consent to a Texas forum-selection clause, standing alone, satisfied traditional notions of fair play and substantial justice).[2]

## III. Venue

### A. The Legal Standard

Federal Rule of Civil Procedure 12(b)(3) allows a case to be dismissed for improper venue. FED. R. CIV. P. 12(b)(3); *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). When a defendant raises improper venue, the plaintiff has the burden to prove that the chosen venue is proper. *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002); 15 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3826 (2d ed. 1986) ("There are cases holding that the burden is on the objecting defendant to establish that venue is improper. But 'the better view,' and the clear weight of authority, is that, when objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue."). Placing the burden on the plaintiff is consistent with this court's recent decisions. *See, e.g., Igene v.* Sessions, No. H-17-3143, 2018 WL 1582239, at *1 (S.D. Tex. Mar. 29, 2018) ("When a defendant raises improper venue, the plaintiff has the burden to prove that the chosen venue is proper."); *Brewer v. United States*, No. CV H-17-870, 2017 WL 6398637, at *1 (S.D. Tex. June 19, 2017) ("When a defendant raises improper venue, the plaintiff has the burden to prove that the chosen venue is proper.").

---

[2] Little also argues that the Federal Arbitration Act cannot establish this court's personal jurisdiction over her because the language of the Act requires "an independent basis for jurisdiction, separate and apart from the jurisdiction purportedly established by the disputed Arbitration Agreement." (Docket Entry No. 10 at 6). Little confuses the Act's discussion of subject matter jurisdiction for a statement on personal jurisdiction. *See* 9 U.S.C. § 4. Little's argument does not support finding that the court lacks personal jurisdiction over her.

12

"On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007) (citing *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)). "[I]n the absence of an evidentiary hearing, a court should allow a plaintiff to carry this burden based upon setting forth facts that taken as true would establish venue." *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001) (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).

### B. Analysis

Little argues that venue is improper because she is not a Southern District of Texas resident; no "substantial part of the events or omissions giving rise to the claim" occurred in this district; and the district courts of Missouri are the proper venue. (Docket Entry No. 10 at 9–10 (citing 28 U.S.C. § 1391(b)). GC Services responds that the forum-selection clause shows that Little consented to venue in this district. (Docket Entry No.11 at 10).

A reasonable forum-selection clause can "give a court jurisdiction over a nonresident defendant." *Goodman Co. v. A & H Supply, Inc.*, 396 F. Supp. 2d 766, 733 (S.D. Tex. 2005). Little has not shown that enforcing the forum-selection clause in the Arbitration Agreement would be unreasonable. The clause is binding, and venue is proper in this district.

## IV. Whether the Court Has the Authority to Enjoin Litigation in the Missouri State Court

### A. The Rule 12(b)(6) Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-

defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"To withstand a Rule 12(b)(6) motion, [a] complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quotation and alteration omitted) (quoting *Twombly*, 550 U.S. at 558).

When a complaint fails to state a claim, the court should generally give the plaintiff a chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often

afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim on which relief could be granted. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016); *see Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012).

### B. Analysis

Little argues that this court cannot enjoin the litigation in the Missouri state court pending arbitration, relying on the Anti-Injunction Act. (Docket Entry No. 10 at 11 (citing 28 U.S.C. § 2283)). GC Services responds that Fifth Circuit precedent firmly establishes this court's authority to enter an order compelling arbitration and enjoining state court proceedings, including in another state's courts, under the Federal Arbitration Act. (Docket Entry No. 11 at 11–12 (citing *Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018), *cert. dismissed*, 139 S. Ct. 660 (2018); *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 898 (5th Cir. 2013)).

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. An order to compel arbitration is a final decision that qualifies as a "judgment" under the Anti-Injunction Act. *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 714 n.3 (5th Cir. 2002). "[A] district court has the discretion to issue an order staying a related state court proceeding it has determined must be submitted to arbitration if the district court concludes that it is necessary to protect or effectuate its order compelling arbitration." *Am. Family Life*, 714 F.3d at 893.

GC Services is correct that courts have routinely concluded that an order staying state-court proceedings in favor of arbitration does not violate the Anti-Injunction Act, if the court concludes that a stay is necessary to protect the order compelling arbitration. *See, e.g.*, *id.*; *Aptim Corp.*, 888 F.3d at 144–45; *Conseco Fin. Servicing Corp. v. Shinall*, 51 F. App'x. 483, 2002 WL 31319368, at *7 (5th Cir. Oct. 1, 2002) (per curiam); *Bank v. Windham*, No. 2:15-CV-163-KS-MTP, 2016 WL 390071, at *4 (S.D. Miss. Feb. 1, 2016). Because GC Services's complaint alleges facts sufficient to state a claim for an order compelling arbitration, the complaint adequately pleads facts supporting an injunction to stay the state-court proceedings in favor of arbitration.

## V. Conclusion

Little's motion to dismiss is denied. (Docket Entry No. 9). Her earlier motion to dismiss is denied as moot. (Docket Entry No. 7).

SIGNED on June 27, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge